IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CITY OF BENKELMAN, NEBRASKA, A Political Subdivision, | ) ) ) ) | |
| Plaintiff, | ) ) | 7:15CV5003 |
| v. | ) ) ) | |
| BASELINE ENGINEERING CORPORATION, A Colorado Corporation, and LAYNE CHRISTENSEN COMPANY, A Delaware Corporation, | ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| Defendants. | ) ) | |

In 2005, the Nebraska Department of Health and Human Services ("DHHS") ordered the City of Benkelman, Nebraska, to address the presence of uranium in its drinking water that exceeded the quantity allowed under federal drinking-water standards. The City contracted with both of the defendants to engineer and construct a water treatment plant ("WTP") that would address its water-quality issues. The City now sues the defendants in this diversity action for breach of contract, negligence, professional negligence, and misrepresentation for providing design and equipment that were "inadequate" to treat the City's water, as evidenced by poor water-testing results and the DHHS's denial of final approval of the WTP due to its failure to effectively treat the City's water. The City seeks damages "in excess of $5,500,000." (Filing 1, Complaint.)

Defendant Baseline Engineering Corporation ("Baseline") has filed a "Motion for Dismissal Pursuant to F.R.C.P. 12(B)," arguing that this court lacks jurisdiction over the City's claims because the City and Baseline entered into a contract that

requires that disputes be resolved in arbitration in Colorado or, alternatively, in the District Court for the County of Jefferson, Colorado. (Filing 12.) While the caption of Baseline's motion does not specify which portion of Fed. R. Civ. P. 12(b) provides the basis for dismissal, the text of the motion states that this court "lacks jurisdiction" and that "this Court's jurisdiction is limited to enforcing the valid and enforceable forum selection clause in the Contract." (Filing 12 at CM/ECF p. 2.) Accordingly, I construe the basis of Baseline's motion to dismiss to be Fed. R. Civ. P. 12(b)(1).[1]

> [A] court deciding a motion under Rule 12(b)(1) must distinguish between a facial attack and a factual attack. In a facial attack, the court merely [needs] to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction. Accordingly, the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).
>
> Conversely, in a factual attack, the existence of subject matter jurisdiction [is challenged] in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. Thus, the nonmoving party would not enjoy the benefit of the allegations in its pleadings being accepted as true by the reviewing court.

---

[1] While there is no clear rule, courts in this circuit and elsewhere have used Rule 12(b)(1) to dismiss cases involving contractual arbitration clauses. *Thompson v. Air Transp. Int'l Liab. Co.*, 664 F.3d 723, 725 (8th Cir. 2011) (affirming Rule 12(b)(1) dismissal because claims were governed by mandatory arbitration clause in collective bargaining agreement); *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015) (adopting magistrate judge's recommendation to dismiss case without prejudice under Rule 12(b)(1) when collective bargaining agreement contained clear arbitration clause); 5B Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 1350 n.15 (3rd ed. Westlaw 2016) (collecting cases holding that Rule 12(b)(1) can be used to dismiss case where obligation to arbitrate is mandatory).

*Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914-15 (8th Cir. 2015) (internal quotation marks and citations omitted).

In this case, Baseline has asserted a factual challenge to this court's subject matter jurisdiction, as it has attached exhibits to its motion to dismiss which contain factual information not included in the City's complaint. Therefore, the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.* (internal quotation marks and citation omitted).

## I. THE EVIDENCE

### A. July 2009 Contract

On July 20 and 21, 2009, the City of Benkelman, Nebraska, and Baseline Engineering Corporation of Golden, Colorado, signed a "Standard Form of Agreement Between Owner and Engineer for Professional Services" ("July 2009 Contract").[2] (Filing 14-2.) The relevant provisions of that agreement for purposes of the pending motion to dismiss are these:

- "This Agreement shall be governed by the laws of the State of Colorado."

---

[2]While not dispositive of the issues involved here, the internal inconsistencies in this contract make it impossible to declare a definite "effective date." The top of the contract is labeled: "**Date**: July 17, 2009." The middle of the first page of the contract states, "'Effective Date' shall mean Date Signed." Just above the signature blocks is language stating that "the Effective Date . . . is indicated on page 1." The City's and Baseline's signatures are dated July 20 and 21, 2009. It is no wonder the parties are now litigating conflicting arbitration and forum-selection clauses.

3

- "This Agreement shall be deemed to have been mutually drafted by the parties hereto. This Agreement shall not be interpreted or construed against any party because such party drafted all or some portion of this Agreement."

- "*Exhibits A and B hereto are incorporated into this Agreement* as fully set forth herein. This Agreement and the documents set forth in Exhibits A and B hereto shall supersede any other contract between OWNER [City of Benkelman] and the ENGINEER [Baseline], relating to the subject matter thereof. This is a fully integrated Contract. Any previous statements, representations, agreements, negotiations or discussions are null and void, and are fully merged herein. *In case of a conflict or inconsistency between this Agreement and any other contract documents, this Agreement shall control.*"

- This language contained in a section entitled "Dispute Resolution":

A. [City] and [Baseline] agree that . . . any litigation, claim, dispute, suit, action, controversy, or proceeding arising out of or relating to this Agreement or the Project ("Claim") shall be resolved in the following manner:

   i) Within 20 calendar days after a Claim arises, [Baseline] and [City] shall attempt to resolve the Claim in a face-to-face meeting, and no litigation shall be commenced during this 20 day period.

   ii) In the event that the parties are unable to resolve the Claim in the meeting referenced in [the paragraph above], all Claims shall be submitted to binding arbitration. All proceedings will be conducted at a suitable location within 15 miles of [Baseline's] then existing principal office. The arbitration shall be completed pursuant to the Uniform Arbitration Act, C.R.S. §13-22-201, *et seq*., and governed by the provisions of the Colorado Rules of Civil Procedure, before a single arbiter. The arbiter shall be mutually agreed upon by the parties, or, in the event of a dispute, before a three panel [sic] arbitration panel, with the third arbiter selected by each party's own selected arbiter. Each party shall pay

4

their own fees and costs related to such arbitration, which shall not be awarded as costs of arbitration. Judgment on an arbitrator's award may be entered in any court of competent jurisdiction.

B. In the event that the parties waive arbitration, or the terms of this paragraph . . . are found invalid or not applicable to a dispute, venue for any court proceeding will be the District Court for Jefferson County, State of Colorado.

- A half-page grid at the top of the first page of the agreement contains boldface lettering that states: "**Job Description: See Exhibit B hereto—for accompanying EJCDC agreement**" and "**Amounts below are shown in the EJCDC Agreement and per the funding agreement with USDA**."

(Filing [14-2 at CM/ECF pp. 1](14-2 at CM/ECF pp. 1)-4 (italics added).)

**B. EJCDC Agreement**

Attached to the July 2009 Contract is a "Standard Form of Agreement Between Owner and Engineer for Professional Services Funding Agency Edition" prepared by the "Engineers Joint Contract Documents Committee" (hence the reference in the July 20 Contract to the "EJCDC Agreement"). The first page of the EJCDC Agreement states that it was "effective as of July 20, 2009" and is between the City of Benkelman and Baseline. The EJCDC Agreement was signed by the Mayor of Benkelman on August 17, 2009, and by Baseline on August 27, 2009. The USDA Rural Development Agency signed the agreement in a signature block entitled, "Agency Concurrence" on October 5, 2009. The provisions of the EJCDC Agreement relevant to the pending motion to dismiss are these:

- "This Agreement is to be governed by the law of the state in which the Project is located, its conflict of laws provisions excepted."

- This language contained in a section entitled "*Dispute Resolution*":

  A. [City] and [Baseline] agree to negotiate all disputes between them in good faith for a period of 30 days from the date of notice prior to invoking the procedures of Exhibit H or other provisions of this Agreement, or exercising their rights under law.

  B. If the parties fail to resolve a dispute through negotiation under [paragraph A above], then either or both may invoke the procedures of Exhibit H. If Exhibit H is not included, or if no dispute resolution method is specified in Exhibit H, then the parties may exercise their rights under law.

- This language contained in Exhibit H, which is entitled "Dispute Resolution":

  B. Arbitration. If the parties mutually agree, and the amount in controversy is less than $200,000 the Disputes between [City] and [Baseline] shall be settled by arbitration in accordance with the Judicial Arbiter Group rules effective at the Effective Date of the Agreement, subject to the conditions stated below. This agreement to arbitrate and any other agreement or consent to arbitrate entered into in accordance with this paragraph . . . will be specifically enforceable under prevailing law of any court having jurisdiction.

  . . . .

  2. All demands for arbitration and all answering statements thereto which include any monetary claims must contain a statement that the total sum or value in controversy as alleged by the party making such demand or answering statement is not more than $200,000 (exclusive of interest and costs). The arbitrators will not have jurisdiction, power, or authority to consider, or make findings (except in denial of their own jurisdiction) concerning any Dispute if the amount in controversy in such Dispute is more than $200,000 (exclusive of interest and costs). Disputes that are not subject to arbitration under this paragraph may be resolved in any court of competent jurisdiction.

- This language contained in a section entitled "*Total Agreement*":

    This Agreement (consisting of pages 1 to 13, inclusive, together with [Exhibits A-J] identified above) constitutes the entire agreement between [City] and [Baseline] for the Project and supersedes all prior written or oral understandings. This Agreement may only be amended, supplemented, or modified by a duly executed written instrument based on the format of Exhibit J to this Agreement.

(Filing 14-2 at CM/ECF pp. 9, 15-16, 19-21, 50.)

## C. Conduct of the Parties

In 2011, the parties signed three change orders entitled, "Extension of Standard Form of Agreement: Additional Work/Change Order" ("Change Orders") adding additional work to the WTP project.[3] Each order specifically references and quotes the "Additional Work" clause in the "Standard Form of Agreement Dated [July 17, 2009]"—which is the "July 2009 Contract" discussed above—and states that "All Additional Work will be performed under and considered an extension of the above mentioned Agreement."

On August 21, 2015, Baseline's attorney filed a Demand for Arbitration with the Judicial Arbiter Group in Denver, Colorado, alleging breach of contract, quantum meruit, and unjust enrichment stemming from the City of Benkelman's alleged failure to pay Baseline $31,714 for services provided in connection with the WTP project. (Filing 14-3, Aff. L. Tyrone Holt; Filing 14-4, Demand for Arbitration.) The current status of the arbitration proceedings is not clear. Also on August 21, 2015, the City of Benkelman filed this lawsuit against Baseline and against Layne Christensen Company, which was awarded the construction contract for the WTP.

---

[3]The effective dates of the Change Orders are impossible to identify. All three are dated "June 29, 2011" at the top, but one was signed on October 19, 2011, and the other two on July 20, 2011. (Filing 27-1 at CM/ECF pp. 5-7.)

7

## II. ANALYSIS

Baseline moves to dismiss the City's claims against it for lack of jurisdiction because the parties' contract provides that jurisdiction for the resolution of any dispute between them properly lies in arbitration in Colorado or, failing arbitration, in the District Court for the County of Jefferson, Colorado. The City argues that this case should remain in this court because: (1) the July 2009 Contract that contains the Colorado arbitration and forum-selection language is "not the controlling agreement" because the EJCDC Agreement "expressly states that it supersedes any and all prior agreements"; (2) the EJCDC Agreement states that the proper forum for dispute resolution is the state in which the project is located, which is Nebraska; and (3) arbitration is not required in this case because the EJCDC Agreement specifies that arbitration only applies to disputes with a value of less than $200,000 and only upon mutual agreement, and neither of those conditions are present in this case. (Filing [24 at CM/ECF p. 2](#).)

The contracts in this case must be construed as one because they involve the same parties and same transaction, and because the July 2009 Contract expressly incorporates the EJCDC Agreement into it as "Exhibit B." Under both Colorado and Nebraska law, "[w]hen an agreement between parties is contained in more than one instrument, those instruments must be construed together as though they comprised a single document." *Chambliss/Jenkins Associates v. Forster*, 650 P.2d 1315, 1318 (Colo. App. 1982); *Fuller & Co. v. Mountain States Inv. Builders*, 546 P.2d 977, 979 (Colo. App. 1975) (same); *McCord & Burns Law Firm, LLP v. Piuze*, 752 N.W.2d 580, 586 (Neb. 2008) ("Instruments made in reference to and as part of the same transaction are to be considered and construed together."); *Properties Inv. Grp. of Mid-Am. v. Applied Communs., Inc.*, 495 N.W.2d 483, 490 (Neb. 1993) ("Instruments made in reference to and as a part of a transaction should be considered and construed together."; while two agreements and other documents were "not bound together at the time of the execution," but instead were "subsequently caused to be bound together by the purchaser's attorneys," trial court was not clearly wrong in holding

that all documents were part of one transaction, and there was "no merit to [one party's] contention that the various documents should be construed separately").

However, considering the July 2009 Contract and the attached EJCDC Agreement as one creates direct conflicts in at least two particulars: the applicable law (Colorado or Nebraska) and whether the City and Baseline must arbitrate their dispute. When two provisions of an agreement are incompatible, the agreement as to those provisions is ambiguous, and the court may apply canons of construction to interpret the contract and consider extrinsic evidence to discern the intent of the parties. *JTS Choice Enterprises, Inc. v. E.I. Dupont De Nemours & Co.*, No. 11-CV-03143, 2013 WL 154421, at *3-4 (D. Colo. Jan. 15, 2013); *David Fiala, Ltd. v. Harrison*, 860 N.W.2d 391, 397 (Neb. 2015) ("If a contract is ambiguous, the meaning of the contract is a question of fact and a court may consider extrinsic evidence to determine the meaning of the contract."; remanding to district court for consideration of extrinsic evidence when contractual language was reasonably subject to two directly conflicting interpretations); *Kast v. Am.-Amicable Life Ins. Co. of Texas*, 559 N.W.2d 460, 464 (Neb. 1997) ("If we find that an insurance policy is ambiguous, then we may employ rules of construction and look beyond the language of the policy to ascertain the intention of the parties.").

> "This extrinsic evidence may include any pertinent circumstances attendant upon the transaction, including the conduct of the parties under the agreement." *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1314 (Colo. 1984). Courts in Colorado "have found the conduct of the parties before the controversy arose to be a reliable test of their interpretation of the agreement." *East Ridge [of Fort Collins, LLC v. Larimer & Weld Irr. Co.]*, 109 P.3d [969,] 975 [(Colo. 2005)].

*JTS Choice Enterprises, Inc.*, 2013 WL 154421, at *4. *See also Concerning Application for Water Rights of Town of Estes Park in Larimer Cty., In So. Platte River & Its Tributaries v. Northern Colorado Water Conservancy Dist.*, 677 P.2d 320, 327 (Colo. 1984) ("It is also well-established that the parties' construction of a

contract before a dispute arises is a particularly persuasive aid in determining the true meaning of the agreement."); *Nowak v. Burke Energy Corp.*, 418 N.W.2d 236, 241-42 (Neb. 1988) ("It is well-established law in [Nebraska] that the interpretation given to a contract by the parties themselves while engaged in the performance of it is one of the best indications of true intent and should be given great, if not controlling, influence."); Restatement (Second) of Contracts § 209 (Westlaw 2016) ("[B]oth integrated and unintegrated agreements are to be read in the light of the circumstances and may be explained or supplemented by operative usages of trade, by the course of dealing between the parties, and by the course of performance of the agreement.").

The Change Orders executed by the parties before this dispute arose specifically reference and quote verbatim the "Additional Work" clause from the July 2009 Contract. Further, the language in the Change Orders providing that "[a]ll Additional Work will be performed under and considered an extension of the above mentioned Agreement" indicates the parties' intent that the July 2009 Contract remain operative, controlling, and *not* superseded by the attached EJCDC Agreement.

The parties' conduct in executing these Change Orders as an "extension" of the July 2009 Contract negates the idea that the parties intended the integration clause in the EJCDC Agreement—stating that it alone was the "entire agreement" between the parties and that it "supersedes all prior written . . . understandings"—to encompass only that agreement. To the contrary, the parties' conduct indicates that they intended the July 2009 Contract, *along with* the attached EJCDC Agreement, to be their "entire agreement." *See* Restatement (Second) of Contracts § 209 cmt. b (Westlaw 2016) ("Written contracts, signed by both parties, may include an explicit declaration that there are no other agreements between the parties, but such a declaration may not be conclusive. The intention of the parties may also be manifested without explicit statement and without signature."); *United States v. Rockwell Int'l Corp.*, 124 F.3d 1194, 1199 (10th Cir. 1997) ("Merely because a writing claims to be a final and exclusive expression of the parties' agreement does not in itself prohibit the court from looking beyond the document to see if other agreements exist between the

parties."); *Travelers Indem. Co. v. Howard Elec. Co.*, 879 P.2d 431, 434 (Colo. App. 1994) (adopting Restatement (Second) of Contracts § 209); *Leo A. Daly Co. v. Omaha-Douglas Pub. Bldg. Comm'n*, 324 N.W.2d 252, 256 (Neb. 1982) (applying Restatement (Second) of Contracts § 209).

This conclusion is supported by the language in the July 2009 Contract stating that: (1) the EJCDC Agreement is "incorporated into" it; (2) the July 2009 Contract and its attachments (which contain the EJCDC Agreement) "shall supersede any other contract" between the parties; and (3) the July 2009 Contract and its attachments constitute a "fully integrated Contract." (Filing 14-2 at CM/ECF p. 3.) *Green Earth Wellness Ctr., LLC v. Atain Specialty Ins. Co.*, No. 13-CV-03452, 2016 WL 632357, at *4 (D. Colo. Feb. 17, 2016) ("the Court should examine a given phrase in the context of the agreement as a whole, not in isolation"); *Simpson v. Simpson*, 232 N.W.2d 132, 136-37 (Neb. 1975) ("In construing an agreement for arbitration, a particular clause or phrase should not be viewed in isolation. . . . the entire instrument must be considered as a whole.").

The parties clearly contemplated that integrating the July 2009 Contract and the attached EJCDC Agreement would create inconsistencies, so they included a provision in the July 2009 Contract setting forth the manner in which such conflicts should be resolved: "In case of a conflict or inconsistency between this Agreement and any other contract documents, *this Agreement shall control*." (Filing 14-2 at CM/ECF p. 3 (emphasis added).) Therefore, the July 2009 Contract "controls" the conflicting provisions regarding applicable law and arbitration, making Colorado law applicable and requiring the parties to submit to binding arbitration in Colorado, to be conducted in the fashion described in the July 2009 Contract. *Northern Colorado Water Conservancy Dist.*, 677 P.2d at 327 (separate instruments that pertain to the same transaction should be read together in order to ascertain the agreement of the parties; "In this way each document can provide assistance in determining the meaning intended to be expressed by the others."); *Green Earth Wellness*, 2016 WL 632357, at *4 ("When construing the terms of a contract, the Court's ultimate

11

objective is to give effect to the parties' mutual intentions."); *White River Vill., LLP v. Fid. & Deposit Co. of Maryland*, No. 08-CV-00248, 2009 WL 792728, at *3 (D. Colo. Mar. 23, 2009) ("When faced with conflicting provisions in a contract, a court should adopt, if possible, a reasonable interpretation of the contract that gives effect to all its provisions." (citing 5 Arthur L. Corbin, Corbin on Contracts § 24.23 (1998)).[4]

## III. ENTRY OF JUDGMENT UNDER RULE 54(B)

Generally, the circuit courts of appeal only consider "orders that dispose of all claims as final and appealable under 29 U.S.C. § 1291." *Downing v. Riceland Foods, Inc.*, 810 F.3d 580, 585 (8th Cir. 2016). Federal Rule of Civil Procedure 54(b)[5] is an

---

[4]Neither party mentions or argues that the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*, applies or affects the result here. In any event, "[t]he existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked. . . . We look to state law principles of contract formation to tell us whether an agreement to arbitrate has been reached." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997); *Stein v. Burt-Kuni One*, LLC, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005) ("The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked. The Tenth Circuit relies on state law principles of contract formation to determine whether parties have agreed to arbitrate an issue or claim." (internal quotation marks and citation omitted)).

[5] When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment

12

exception to this rule, "allowing a district court to enter a final judgment on some but not all of the claims in a lawsuit." *Id*. (internal quotation and citation omitted). Where a case deals "with essentially one set of facts, with which [an appellate court] would need to refamiliarize itself on subsequent appeals[,] [a] similarity of legal or factual issues will weigh heavily against entry of judgment under Rule 54(b)." *Hayden v. McDonald*, 719 F.2d 266, 270 (8th Cir. 1983) (internal quotation, bracketing, and citation omitted).

In deciding whether to certify a final judgment under Fed. R. Civ. P. 54(b), this court must "weigh and examine" (1) whether there is a final judgment—that is, "an ultimate disposition of an individual claim," and (2) whether there is a just reason for delay, which involves considering "both the equities of the situation and judicial administrative interests, particularly the interest in preventing piecemeal appeals," and keeping in mind that "[c]ertification should be granted only if there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Jones v. West Plains Bank & Trust Co.*, No. 15-1714, 2015 WL 9465943, at *3 (8th Cir. Dec. 28, 2015) (internal quotation and citation omitted); *see also Taco John's of Huron, Inc. v. Bix Produce Co., LLC*, 569 F.3d 402, 402 (8th Cir. 2009).

The following factors should be considered in deciding whether there is a danger of hardship or injustice in allowing the case to take its ordinary course—that is, without certifying part of the case for early appellate review.

> (1) the relationship between the adjudicated and unadjudicated claims;
> (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second

> adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

13

time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Downing*, 2016 WL 158294, at *4 (internal quotation and citation omitted). The court may consider "res judicata effect" as part of the fifth "miscellaneous" factor above. *Id*. at *5.

Here, the City's case against Baseline is based on a contract between only those parties. The City's claim against defendant Layne Christensen Company—and Layne's counterclaim against the City—are based on an entirely separate contract. Other than the fact that the two defendants' professional services were rendered on the same structure in Benkelman, Nebraska, the contractual issues involving the City and Baseline on one hand, and the City and Layne on the other hand, are not related, and the legal issues must be independently resolved based on those different contracts. Further, there are no cross-claims for contribution such that the City's claims against Layne and Baseline are intertwined, and any damages suffered by the City would stem from completely different conduct as between Baseline and Layne. In other words, entry of a Rule 54(b) judgment would not hinder, delay, or complicate the Layne claims that are still pending in this court because: (1) there is little relationship between the City's claims against Baseline, which will be dismissed without prejudice and sent to arbitration, and the City's claims against Layne; (2) future developments in this court concerning Layne will have no effect on the claims involving Baseline that will proceed to arbitration or in the District Court for the County of Jefferson, Colorado; and (3) the appellate court would not face the same factual and evidentiary circumstances should the "Baseline claims" or the "Layne claims" be appealed. This is not a case where delaying the appeal is "particularly desirable," as when "the adjudicated and pending claims are closely related and stem from essentially the same factual allegations." *Huggins v. FedEx Ground Package Sys., Inc.*, 566 F.3d 771, 775 (8th Cir. 2009).

14

It would be more judicially and economically efficient to allow the parties to file an appeal from this decision now, rather then trying to unwind a complex scenario where, for example, the Colorado arbitration proceeds as to the City and Baseline; an action to enforce the arbitration award is required, and judgment is entered in the District Court for the County of Jefferson, Colorado; the case in this court is not appealed until after the Layne claims are tried and resolved here; and then the Eighth Circuit Court of Appeals decides that this court should have retained jurisdiction over the Baseline claims in the first place.

Because the dismissal of the City's claims against Baseline is an "ultimate disposition" of those claims, and because there is no just reason for delay, I shall enter a judgment of dismissal without prejudice regarding those claims under Fed. R. Civ. P. 54(b).

## IV. CONCLUSION

Because the arbitration, applicable law, and forum-selection clauses in the July 2009 Contract between the City of Benkelman and Baseline are enforceable under Colorado law, the City's claims against Baseline must proceed to arbitration in Colorado, which shall be conducted in the fashion described in the July 2009 Contract. (Filing 14-2 at CM/ECF p. 3.) The City's lawsuit against defendant Layne Christensen Company, along with Christensen's counterclaim against the City—which are based on an entirely separate contract—are not affected by my ruling on Baseline's motion to dismiss, and those claims shall remain pending in this court.

Accordingly,

IT IS ORDERED:

1.	The "Motion for Dismissal Pursuant to F.R.C.P. 12(B)" (Filing 12) filed by defendant Baseline Engineering Corporation is granted, and plaintiff City of

Benkelman's claims against Baseline Engineering Corporation are dismissed without prejudice for lack of jurisdiction;

2. Plaintiff City of Benkelman's claims against defendant Baseline Engineering Corporation shall proceed to arbitration in Colorado consistent with the terms stated in the parties' July 2009 Contract (Filing [14-2 at CM/ECF p. 3](14-2 at CM/ECF p. 3));

3. Plaintiff City of Benkelman's lawsuit against defendant Layne Christensen Company, along with Christensen's counterclaim against the City, shall remain pending in this court because these parties' dispute involves an entirely different contract; and

4. The Clerk of Court shall terminate defendant Baseline Engineering Corporation as a party in this case, and a [Fed. R. Civ. P. 54(b)](Fed. R. Civ. P. 54(b)) judgment shall be entered as to such party by separate document.

DATED this 21st day of March, 2016.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge